UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SHERELL S. STANLEY,<br><br>Plaintiff,<br>v.<br><br>CITY OF DETROIT,<br><br>Defendant.<br>______________________________ / | Case No. 24-11264<br><br>Hon. F. Kay Behm<br>United States District Judge |

**OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 21)**

## I. PROCEDURAL HISTORY

This is an employment discrimination case. Plaintiff Sherell Stanley filed a complaint in this court on May 13, 2024 (ECF No. 1), and discovery commenced on August 20 of that year. This matter is now before the court on Defendant City of Detroit's motion for summary judgment on all counts (ECF No. 21).

For the reasons explained below, the court **GRANTS** the motion **IN PART** and **DENIES** it **IN PART**. The result is that Stanley's retaliation and *Monell* claims are dismissed in full, but portions of her race and sex discrimination claims (Counts 1-4) survive.

## II. FACTUAL BACKGROUND

Plaintiff Sharrell Stanley was appointed to the Detroit Police Department ("DPD") on June 24, 1996. ECF No. 21, PageID.131. Throughout her career, she has been transferred to many divisions within DPD. On August 11, 2000, Plaintiff was promoted to Sergeant. On December 21, 2010, Plaintiff was promoted to Lieutenant, a rank she remained at until she left the department in 2023.[1] Plaintiff comes forward with several charges of discrimination based on a few different sets of facts.

### A. Overtime Pay and Related Grievance

Plaintiff first states that she was not compensated for overtime worked in February and March of 2021. On May 6, 2021, Plaintiff's union, the Detroit Police Lieutenants and Sergeants Association ("DPLSA") filed a grievance after receiving an email from Plaintiff regarding this issue. ECF No. 21-4, PageID.181-89. At the second step of the grievance process, Plaintiff's supervisor, Captain Tonya Leonard-Gilbert, a black female, responded to the grievance and informed the

[1] Plaintiff asserted discrimination in this promotion process, in Case No. 11-cv-12365, which settled and closed in 2016.

union that all of the requested hours were paid except February 15th and 18th (totaling 38.5 hours paid, with 6 hours unpaid) and that the outstanding request for the remaining 6 hours on those dates was returned for clarification and resubmission. *Id.* Notes attached to the denial reflect the specific grounds for the denial. ECF No. 21-4, PageID.186-87. No documents in the record suggest that Plaintiff resubmitted or clarified her overtime request at that time, and DPLSA closed Plaintiff's grievance in May 2021. ECF No. 21-11, PageID.396.

On January 19, 2023, Plaintiff sent an email to DPLSA requesting that her grievance be reopened. *Id.* On January 24, 2023, DPLSA requested DPD to reopen Plaintiff's overtime grievance to provide Plaintiff the opportunity to show that she was authorized to work overtime for the two dates in question. The City agreed, however, the City's documentation dated March 10, 2023, indicates that Plaintiff failed to provide additional documentation to either DPLSA or the City, and the grievance was denied and once again closed. ECF No. 21-11, PageID.397. Plaintiff says differently: she says she did provide 40 pages of additional information. ECF No. 21-7, PageID.239 (Stanley Dep.). And emails to someone at DPLSA in January 2023 appear to

reflect that she did provide additional documentation to someone at that time, although it is unclear what role that person held in the process. *See* ECF No. 22-2, PageID.431-49.

### B. Performance Ratings and Related Grievance

Plaintiff also alleges she received unfavorable performance ratings for October 2014 and April 2015 in September 2015. ECF No. 22-3, PageID.462. Plaintiff alleges she timely requested an appeal hearing of those ratings in October 2015. ECF No. 22-3, PageID.451 ("I processed an Appeal to the Commanding Officer of the Sixth Precinct dated October 8, 2015"). However, Plaintiff did not receive a hearing until 2022. On August 19, 2021, Plaintiff approached Director Katrina Patillo, a Black female employee in the Human Resources office and attempted to serve her with a grievance regarding an appeal hearing for her 2014 and 2015 service ratings. ECF No. 21-5, PageID.199-200; ECF No. 22-3, PageID.460 (2021 grievance). Patillo's testimony alleges that is not proper procedure to file a grievance. *Id.* Immediately after the encounter, Patillo filed a complaint, which was forwarded to the City's office of civil rights as a workplace violence complaint because Plaintiff's demeanor made Director Patillo feel uncomfortable. *Id.* at

PageID.211. At the time, Plaintiff worked in the same building as Director Patillo. On August 23, 2021 (days later), Plaintiff was transferred to the second precinct on what she says was a "midnight" shift. ECF No. 22, PageID.412. On August 30, 2021, Plaintiff filed a grievance about the transfer on the basis that the transfer was a form of discipline because she served the Director with a grievance. ECF No. 21-6, PageID.224-25.

In September 2022, Plaintiff also made two internal complaints of discrimination. She filed a complaint against Patillo with the DPD office of civil rights, inclusion, and opportunity (CRIO), as well as to several Captains via email regarding Patillo's treatment of Plaintiff. ECF No. 22, PageID.408 (citing Defendant's Motion Exhibit Stanley Dep 57:1-25 and 58:23-59:15; ECF No. 22-7, PageID.566 ("Discrimination Complaint Email"); ECF No. 22-8, PageID.568-70 ("CRIO Email").

On October 13, 2022, Plaintiff had a Performance Evaluation Appeal Hearing on her 2014 and 2015 service ratings. Plaintiff alleges that she was only notified of the hearing on the day of and was never informed of the disposition. ECF No. 1, PageID.10.

### C. Retirement

On September 11, 2023, Plaintiff retired from the Police Department. ECF No. 22-4, PageID.533-37. The notice of retirement includes a statement of "reasons for leaving." Stanley listed a number of reasons, including the "toxicity of my work environment," including "cronyism, discrimination, and retaliation," her "stagnant" career, her accomplishments or contributions that went unrecognized, and the buildup of a number of grievances and complaints she had made over the years. *Id.* The notice also includes a statement from her commanding officer: "Lt. Stanley stated that her career has become stagnant and there is no opportunity for growth/upward mobility." *Id.* On December 19, 2023, Stanley filed a charge of discrimination with the EEOC. ECF No. 21-2, PageID.170.

## III. STANDARD OF REVIEW

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to

particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts

showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and to do so must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'" *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004). In order to fulfill this burden, the non-moving party only needs to demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 251.

## IV. ANALYSIS

Plaintiff brings seven-count complaint alleging discrimination and retaliation. Counts 1 and 2 allege race discrimination under Title VII and the Michigan Elliot-Larsen Civil Rights Act (ELCRA), respectively. Counts 3 and 4 allege sex discrimination under Title VII and ELCRA, respectively. Counts 5 and 6 allege retaliation under those statutes,

respectively. And Count 7 alleges a *Monell* violation for equal protection violations under 42 U.S.C. § 1983. The court starts by discussing the first four counts as a group, then proceeds to the retaliation and *Monell* arguments.

### A. Counts 1-4: Race and Sex Discrimination

Title VII applies when an employer attempts to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's" race or sex. 42 U.S.C. § 2000e-2(a)(1). The ELCRA similarly prohibits "discriminat[ing] against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of" race or sex. Mich. Comp. Laws § 37.2202(1)(a). Stanley's claims of sex and race discrimination rely on circumstantial evidence and therefore utilize the *McDonnell Douglas* framework. *See Hrdlicka v. GM LLC*, 63 F.4th 555, 575 (6th Cir. 2023); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-06 (1973). Under this approach, Stanley carries the initial burden to prove a prima facie case of race and sex discrimination. *McDonnell Douglas*, at 802. To satisfy her burden, Stanley must show that she: (1) is a member of a protected class, (2)

suffered an adverse employment action, (3) was qualified for her position, and (4) was either replaced by someone outside of her protected classes or treated differently than similarly situated white or male employees. *See Moore v. Coca-Cola Bottling Co. Consol.*, 113 F.4th 608, 622 (6th Cir. 2024). If she establishes a prima facie case, the burden shifts to the Defendant to identify a legitimate, nondiscriminatory reason for their actions. *Id.* at 623. If they can do so, then the burden shifts back to Stanley to show that the Defendant's reason is pretextual. *Id.*

Plaintiff claims in her response that each of the following are instances of both race and sex discrimination:

1) Stanley was not compensated for overtime (as opposed to just required to provide additional documentation);
2) Stanley was required to produce more documentation regarding overtime than similarly situated individuals;
3) Stanley was denied an appeal of her 2014 and 2015 performance evaluation ratings, where similarly situated individuals were promptly offered an appeal;
4) Stanley was not issued service ratings by her supervisor;
5) Stanley was denied an investigation into her complaints of misconduct and the toxicity of her environment, while similarly situated individuals of other races/genders were given investigations when they complained;

6) Stanley was involuntarily transferred from the Chief's Neighborhood Liaison to a different precinct and shift; and

7) Stanley was constructively discharged.

ECF No. 22, PageID.414-19.[2]

Because the framework for Plaintiff's race and sex discrimination claims is identical, the court proceeds by addressing each of the alleged adverse employment actions in turn.

As a threshold point, Plaintiff argued at some length in her brief and at oral argument that Defendant had waived argument as to most of these claims by failing to address them in their opening brief. ECF No. 22, PageID.418. Defendant responded that Plaintiff's complaint was not well-pleaded, so Defendant essentially was attempting to guess at her claims in moving for summary judgment, and should not be punished if they misconstrued a claim she later clarified in response. ECF No. 24, PageID.578. Defendant also argues that they did address the substance of the claims she identified in any case. *Id.* The court largely agrees with Defendant that its arguments were not waived. The

[2] Neither party quite organizes the claims in this exact manner; the court does so in an attempt to consolidate and re-organize the various claims that are raised in various briefs.

court, too, had difficulty understanding which particular facts in Plaintiff's complaint were intended to fall under each particular claim, so Defendant can hardly be penalized for failing to anticipate every argument Plaintiff would make. Although the complaint pleads many facts, the actual counts are barebones and composed of stock allegations. For example, in her federal claim for race discrimination in her complaint, Plaintiff alleged she was "subjected to an adverse employment action, i.e. differing terms and conditions of employment, denial of promotion,[3] and constructive discharge terminated on September 11, 2023. There was no legitimate business reason for any of the adverse actions taken against Plaintiff." ECF No. 1, PageID.14. She now says that Defendant should have anticipated that this phrase included each of the claims listed above and waived argument on the ones they failed to address. The court does not find that Defendant waived argument entirely as to these topics; the points or general issues were sufficiently addressed in Defendant's initial argument that their more specific arguments in reply are properly considered. To the extent

[3] Plaintiff does not assert a failure to promote claim. She does assert that a lack of service ratings affected her ability to be promoted. *See* ECF No. 22, PageID.413.

that any more specific arguments may have been waived, those points are addressed in more detail below.

**i. Denial of overtime**

Stanley's first claim is that she was discriminatorily not compensated for overtime. ECF No. 22, PageID.418.[4] Defendant has properly raised the argument that her claim fails at the prima facie step because she does not identify any similarly situated individuals of a different race and gender who were treated differently. ECF No. 21, PageID.138; ECF No. 24, PageID.579. To establish that she was treated differently than similarly situated employees, Stanley must show that she and her proposed comparators were similar in "all relevant respects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998) (emphasis omitted). In every case, the court must make an "independent determination" of what factors are relevant, and that determination depends on whether certain factors "are meaningful to the particular claim of discrimination

[4] Plaintiff's Title VII claim for discrimination in denying her overtime appears untimely because she filed her EEOC charge more than 300 days after this event. However, Defendant did not raise this affirmative defense in their motion or reply.

presented." *Rembert v. Swagelok Co.*, 2023 U.S. App. LEXIS 10333, 2023 WL 3094546, at *7 (6th Cir. Apr. 26, 2023) (quoting *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012), abrogated on other grounds by *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)); *see also Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006) (explaining the necessity of independently determining factors relevant to this inquiry). Ordinarily, "to be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Jordan v. Mathews Nissan, Inc.*, 539 F. Supp. 3d 848, 873 (M.D. Tenn. 2021) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)); *Webster v. Target Corp.*, No. 22-11293, 2024 U.S. Dist. LEXIS 162076, at *13-14 (E.D. Mich. June 27, 2024).

Plaintiff alleges the relevant comparators are Kimberly Gabriel (white/female) and Anthony Potts (Black/male). Stanley was the Officer in Charge (OIC) of the CORE Division in 2021, while Gabriel and Potts

were OICs of a different unit called PEER Support. Both units fell under the supervision of Leonard-Gilbert. ECF No. 21-9, PageID.344-45 (Leonard-Gilbert Dep.). Plaintiff says these individuals are evidence differential treatment because "their requests for overtime pay were granted." ECF No. 22, PageID.420.

The court finds that Plaintiff has failed to meet her burden to establish that these individuals were similarly situated in all relevant respects. Plaintiff's comparator argument views the facts of this case at too high a level of generality. The facts here show that Plaintiff filed a grievance in May 2021 regarding six hours of unpaid overtime from February 2021. Plaintiff had submitted a request for payment of overtime for a variety of hours; the majority of entries were approved and paid (totaling 38.5 hours), but two 3-hour entries were returned to Plaintiff for clarification and resubmission. ECF No. 21-4, PageID.183. Plaintiff, therefore, does not represent an individual who had her overtime denied compared to an individual whose overtime was granted; she represents an individual who on one occasion had a small portion of her overtime request denied. The paperwork reflects that the supervisor indicated that those particular hours were denied because it

was either not clear what Stanley had worked on, or that overtime pay was not authorized for the work she did do. ECF No. 21-4, PageID.186-87. The proper comparator under these circumstances is not simply other employees who submitted overtime requests that were approved in full – a proper comparator for purposes of raising an inference of discrimination is to establish that these other employees never had any part of their overtime requests denied, were never questioned about their time entries, or submitted time for the same kinds of activities and their entries were approved without comment. "[T]o be deemed 'similarly-situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). The overtime denial paperwork and Plaintiff's supervisor's comments indicate that there are differentiating circumstances that distinguished Plaintiff's conduct from overtime requests that are approved. Plaintiff has pointed to no evidence that Potts' and Gabriel's overtime requests

did not receive similar scrutiny or the occasional denial for resubmission and clarification, and did not show that similar time entries were approved for them, so has not shown evidence above mere speculation that Stanley's overtime request would have been approved in full absent discriminatory animus. Defendant is properly granted summary judgment on this claim.

**ii. Requiring additional documentation when submitting a grievance related to denial of overtime**

Relatedly, Stanley claims that she was discriminatorily required to provide more information regarding her overtime pay than others, and she knew this because she had processed overtime material for other employees. *See* ECF No. 21-7, PageID.239 (Stanley Dep. 41:1-9). The point is that Stanley was asked to provide additional documentation to support her grievance that she filed related to the denial of overtime pay as to the unpaid six hours. Plaintiff again alleges the relevant comparators are Gabriel and Potts.

Defendant argues that neither is a proper comparator because Plaintiff failed to show that either Gabriel or Potts filed a grievance

regarding overtime pay, and that in pursuing that grievance they were not required to submit additional documentation. ECF No. 21, PageID.138-39. Plaintiff suggests that is too narrow a view of comparators; she says their requests for overtime pay were granted without the need for a grievance. ECF No. 22, PageID.419-20.

Defendant further argues that "her allegation that she was required to submit more documentation" was a "mere inconvenience, which was requested by her union and the city to show that she was authorized to work overtime," was therefore "an action that would benefit Plaintiff," and "is not an adverse employment action." ECF No. 21, PageID.137. Plaintiff responds that she "was required to provide more information than others[,]" which "is a differing term or condition of employment." ECF No. 22, PageID.415. The third prong of Plaintiff's prima facie case requires a showing of "some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024).[5] Plaintiff, however, has not illustrated

[5] The court notes that Defendant cites *White v. Burlington N. & Santa Fe Ry.* for the proposition that "[a] 'mere inconvenience or an alteration of job responsibilities' or a 'bruised ego' is not enough to constitute an adverse employment action." 364 F.3d 789, 797 (6th Cir. 2004), *aff'd* 548 U.S. 53 (2006). But the Supreme Court's decision in *Muldrow v. City of St. Louis* cast significant

why a requirement to provide additional documentation to support her overtime claim, as a condition of appealing an initial adverse overtime pay decision, constitutes any harm respecting a term or condition of her employment, or left her "worse off" in any way. *See McNeal v. City of Blue Ash*, 117 F.4th 887, 900 (6th Cir. 2024) (under *Muldrow*, "the employment action is adverse if it leaves the employee 'worse off respecting employment terms or conditions.'") (quoting citation omitted). It is not at all clear – and Plaintiff does not explain – why the requirement to provide additional documentation to support her grievance is *in itself* harmful or left her worse off (as compared to the denial of overtime pay). As Defendants point out, the general intended result of providing additional documentation in this set of circumstances is to benefit any given complainant by providing reasons to overturn the initial decision and approve their overtime request. ECF No. 21, PageID.137.

Perhaps that too narrowly construes her argument. Plaintiff, for her part, appears to argue that the requirement to provide any

---

doubt on the viability of that formulation. *Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868, 885 (6th Cir. 2024) (noting *Muldrow*'s effect on *White*).

additional documentation as harmful because of the very fact that it constituted (in her view) differential treatment. ECF No. 22, PageID.415; *see also Muldrow*, 601 U.S. at 365 (Kavanaugh, J., concurring) ("The discrimination is harm.").

So the core of this claim comes down to, on Plaintiff's reading, that she has shown differential treatment. But Plaintiff has provided no reason to think a special procedural requirement was imposed on her alone. Properly understood, her argument is that she initially submitted all the paperwork an employee was typically required to produce in an overtime request, and that her overtime therefore should have been approved in the first place. As a result, she should not have been required to provide additional documentation in appealing that initial denial of overtime pay. She has not, however, pointed to any evidence suggesting that there are other individuals who appealed their initial review and were not required to support that appeal or grievance with additional documentation. So no jury could find that procedural requirement discriminatory within the meaning of Title VII. If the CBA does not explicitly state a requirement for additional paperwork at the grievance stage, that may raise some form of claim under the CBA, but

it does not raise an inference of discrimination on the basis of race or sex absent a proper comparator.

To the extent that Stanley's argument is that other employees never had any of their overtime denied, whereas she had a small portion of her overtime denied, that argument contests the substantive denial of overtime pay itself, not the subsequent procedural requirement to provide additional documentation when appealing the initial decision. In other words, Stanley's "additional documentation" claim is entirely derivative of her denial of overtime claim; if the denial of Stanley's overtime was not discriminatory, there is no suggestion, accompanied by similarly situated individuals treated differently, that the requirement of providing additional documentation to appeal that decision was *independently* discriminatory. If, on the other hand, the denial of Stanley's six hours of overtime was itself discriminatory, then the requirement to produce additional documentation to substantiate her claims constitutes time, energy, and likely emotional expense as a result of that discriminatory act – but is not an independent claim on these particular facts.

The court notes that Plaintiff produced evidence appearing to indicate that she did, in fact, submit the required documentation to support her reopened grievance in 2023, but her grievance was still denied on the grounds that she failed to submit documentation. ECF No. 22-2, PageID.431-49; ECF No. 21-11, PageID.396-98.[6] However, absent a proper comparator, this result, which may again be some sort of claim under the CBA, does not make a claim for discrimination under Title VII or ELCRA. Summary judgment will be granted to Defendant on this claim as well.

[6] At oral argument, Defendant indicated that it was the union who requested additional documentation, and the union who closed the reopened Grievance. But the evidence is not entirely clear on that point. DPD appears to have denied the grievance in 2021. ECF No. 21-4, PageID.183. The 2023 letter closing the grievance again appears to be a letter from DPD to the union denying the Grievance, rather than the union closing it. ECF No. 21-11, PageID.396. Ha's letter says the additional documentation should have been submitted "to the Association or the Department," which does not clarify who asked for that documentation. *See also* ECF No. 21, PageID.137 (indicating the documentation "was requested by her union and the city to show that she was authorized to work overtime"). And the Department's conclusions that she failed to submit paperwork are hard to square with the emails Stanley attached – although perhaps she was simply passing her information to the wrong person. So the court accepts as a given that a reasonable jury could question whether this handling of her grievance was proper, and could find that DPD (not the union) effectively imposed this documentation requirement.

### iii. Denied appeal of 2014/2015 ratings

The court now turns to Plaintiff's negative service ratings dating back over a decade. Plaintiff says she was denied an appeal hearing in relation to her unfavorable 2014 and 2015 performance evaluation ratings, but another employee, Lt. Zberkot, requested an appeal in 2015 of her own ratings and was afforded an appeal immediately. ECF No. 22, PageID.414. Stanley says the failure to provide her a timely appeal hearing was discriminatory. *Id.*

Documents attached to Plaintiff's 2021 grievance shows the receipt for Stanley's initial appeal request was October 8, 2015, less than a month after the problematic ratings were issued. Defendant has properly raised the affirmative defense that her discrimination claims arising out of that event are barred as untimely. ECF No. 24, PageID.577. ELCRA claims must be brought within three years from the alleged discrimination, and a plaintiff has 300 days from the alleged discrimination to file a claim with the EEOC for Title VII claims. *Pemberton v. Bell's Brewery, Inc.*, 150 F.4th 751, 771 (6th Cir. 2025); *Fort Bend Cty. v. Davis*, 587 U.S. 541, 549 (2019).

Plaintiff's argument on this issue is hard to follow, and she has never explained her theory very clearly. But as best the court can tell, her claim is that there was no specified time in which Defendant had to provide an appeal hearing, so therefore, there was no time limit on when she could grieve the failure to provide her an appeal hearing, and presumably, no time limit on when she could file an EEOC charge and file suit related to this issue. *See* ECF No. 22-8, PageID.569. In an email, she argued that under department policy, HR must convene a Performance Evaluation Board "'as expeditiously as circumstances permit,' instead of by a date certain," so, in her view, "the Grievance could not be considered untimely since the policy is ambiguous and open ended." *Id.* ("it would be a gross miscarriage of justice/due process if I were penalized for comporting with HR's directive to be patient"). She alleges she followed up with HR occasionally about receiving an appeal hearing (though no email attached in these records appears to show that). *See* ECF No. 22-3, PageID.455-59 (an email sent by Stanley in 2020 shows she appealed service ratings she received in 2020, but does not mention her 2015 ratings until an email in May 2021, six years after the ratings).

Plaintiff filed her Grievance related to this issue herself in August 2021. The CBA states that grievances must be brought within 15 days of the alleged violation or occurrence, and warns that grievances not filed within that time frame "will be considered untimely and will not be processed." ECF No. 21-10, PageID.386; *see* ECF No. 21, PageID.141. Patillo testified that she denied the August 2021 appeal because it was untimely by many years. ECF No. 21-5, PageID.202, 209. Plaintiff, as explained, disagrees that the grievance could be considered untimely.

In October 2022, Plaintiff received a Performance Evaluation Appeal Hearing for her 2014-15 ratings. Plaintiff alleges there were significant problems with the hearing, including that she was only notified of the hearing on the day of and was never informed of the disposition. ECF No. 1, PageID.10.

On this particular issue, the court finds a question of fact as to when this claim accrued and accordingly, when the statute of limitations expired on her Title VII and ELCRA claims. The briefing on this issue is particularly hard to follow or understand. Defendant has properly raised that affirmative defense as to this claim, but it is not

clear when the clock started running. Much of the evidence points to a finding that this is simply a matter that should have been addressed in 2015 or 2016, and Plaintiff's theory that there was effectively no time limit for her to file an EEOC charge as to her 2015 ratings rings hollow. In particular, it seems that Stanley reads her 2021 Grievance to revive a six-year old claim, which the court doubts. But the fact remains that Defendant apparently did give Plaintiff an appeal hearing of these ratings in 2022, and allegedly changed their procedures to require a hearing within a specific time, suggesting that they may have accepted her argument internally that there was effectively no time limit on her claim. That fact, too, is sufficient to question Patillo's nondiscriminatory explanation that the grievance was denied because it was untimely (after all: if the matter was untimely in 2021, then why was Stanley then offered a hearing in 2022?).[7] Because there is a question about when this claim accrued, the court also cannot discount the alleged contemporaneous differential treatment of Lt. Zberkot, who

[7] Defendant's counsel suggested this was simply a matter of grace. Perhaps that is so, but that seems a factual question of Defendant's intent that is difficult to assess on this record.

allegedly received an appeal hearing in 2015.[8] The court notes, however, that Plaintiff's exhibits appear to show that she also appealed a rating in 2020 and received a favorable resolution, raising a question of whether she can truly satisfy differential treatment. *See* ECF No. 22-3, PageID.458. On this briefing, and in the light most favorable to Stanley, a material dispute remains as to when this claim accrued and whether it is time-barred. The parties have also not adequately explained the effect of Stanley having eventually received an appeal hearing on this claim. Finally, although Defendant has properly raised the statute of limitations issue in general and applied that argument specifically to the 2015 ratings, Defendant has not explained whether that argument would bar the Title VII claims even if they did accrue at a later date. Each of these issues is unsuited for resolution on these briefs. Summary judgment will be denied as to this issue.

---

[8] Zberkot, a white female, is the only comparator offered. So in any event, the sex discrimination claim appears to lack a comparator at the prima facie stage of the *McDonnell Douglas* framework, and that would bar her sex discrimination claims as to this claim. ECF No. 22, PageID.420. However, Defendant did not raise this point, so as elsewhere, the court leaves that point aside for the time being and observes it would be more properly raised, if supported by the record, at a later date.

#### iv. Not being issued service ratings

Plaintiff also claims she was discriminated against while being supervised by Deputy Chief Ha, because she was never issued a performance evaluation by Ha. According to Plaintiff, evaluations are required twice a year pursuant to Department policy. ECF No. 22, PageID.411 (citing Plaintiff's Exhibit E, Ha Deposition 14:7-15:11; Defendant's Motion Exhibit 4, Patillo Dep. 8:1-3)). And this was adverse to Plaintiff, she argues, because there was no positive rating to counter the negative performance evaluation on file. ECF No. 22, PageID.415.[9] Defendant argues that "[t]here is no evidence that Grant Ha was supposed to issue Plaintiff with a service rating." ECF No. 24, PageID.579 (citing Plaintiff's Exhibit E, pg. 14).

At oral argument, the court questioned whether Plaintiff had satisfied her summary judgment burden to show that she was treated differently than similarly situated white or male employees, and to

---

[9] For purposes of this opinion, the court assumes that the failure to provide service ratings, and the failure to provide an appeal hearing of a performance rating, can produce "some harm" to Stanley. According to Bettison's testimony, service ratings are used for promotion, and a bad rating would impact an appointment to the rank of Captain. ECF No. 22-5, PageID.541, Bettison Dep. 9:20-10:11. So a jury could accept that the lack of opportunity to get a positive rating (or to change a negative rating) would result in some harm to Plaintiff.

identify those persons. *See Moore v. Coca-Cola Bottling Co. Consol.*, 113 F.4th 608, 622 (6th Cir. 2024).[10] At the hearing, Plaintiff's counsel admitted she had no record evidence of any similarly situated, identified person of another race or gender who was treated differently as to this claim. Plaintiff's argument was instead merely that it was Defendant's responsibility to raise this defect; absent argument on that point, she is entitled to a trial. This apparent concession aside, the court agrees that Defendant's summary judgment briefs did not directly address this point. Assuming the record supports it, this issue is more properly the subject of a separate motion for summary judgment, but dismissal is not proper in this posture. The court also notes that Plaintiff's exhibits appear to show that she also appealed a different service rating in 2020 and received a favorable resolution of that appeal, which seems to be inconsistent with both her position that she had no positive ratings to offset the negative one, and that these were the only negative ratings in her file. *See* ECF No. 22-3, PageID.458.

[10] Ha's testimony, for example, indicates that there was only one other lieutenant assigned to the unit Stanley was on, Shannon Hampton (or Reinhart). ECF No. 22-6, PageID.556. Like Stanley, Hampton is a Black female. ECF No. 21-7, PageID.263 (Plaintiff's testimony).

Again, this was largely unaddressed, so the point is better left for another day. Summary judgment will be denied on this claim.

**v. Involuntary transfer from Chief's Neighborhood Liaison position to midnights on the 2nd Precinct**

Plaintiff also says that she was "involuntarily transferred" to a different precinct, on a midnights shift. ECF No. 22, PageID.418. Defendant addressed the relevance of Plaintiff's transfer solely in the context of retaliation: "This was addressed in Defendant's Motion for Summary Judgment, Retaliation Claim Section. (ECF No. 21 Page ID. 143)." ECF No. 24, PageID.579. In that argument, Defendant claimed that Stanley was transferred for a legitimate and nondiscriminatory reason: Former Chief White testified that a request to reassign her was made and he transferred her on that basis. ECF No. 21, PageID.143-44 (citing ECF No. 21-8, PageID.297-309 (White Dep.)). White did not recall who requested that Stanley be transferred. Plaintiff's response, too, revolves exclusively around the retaliation issue and not a discrimination claim – arguing that she was transferred because of her protected activity and pointing out evidence suggesting that. ECF No. 22, PageID.425.

Plaintiff's argument on that issue appears to resolve the race and sex discrimination claims arising out of her transfer. Accepting Plaintiff's argument on her terms, Stanley was transferred not as an independent discriminatory act but in retaliation for (1) confronting Patillo about receiving an appeal hearing for her 2014/2015 performance ratings, and (2) filing a grievance on that same subject. *Id.* So even assuming that Stanley has otherwise satisfied her burden to present a prima facie case, her argument regarding retaliation seems to concede that Defendant's reasons for transferring Stanley satisfy the second step of *McDonnell Douglas*. That is, according to the terms of Stanley's argument, Defendant did not take the complained-of action for a "discriminatory" reason within the meaning of Title VII because her transfer did not occur because of her race or sex, but instead because of her oppositional activity. Still, the Sixth Circuit has generally said that alternative theories and argument are permitted. *See Vanguard Fire & Supply Co. v. NLRB*, 468 F.3d 952, 959 (6th Cir. 2006). So the court instead notes that Defendant did not directly brief the transfer as a discrimination claim and for that reason, the claim survives this motion. Nonetheless, at oral argument Plaintiff's counsel also admitted

there was no record evidence of any identified comparators on the basis of race or sex as to this claim. Because Defendant did not raise that particular ground, it would be more properly brought in a separate motion if the record supports it.

**vi. Denied "investigation into misconduct" when comparably situated individuals received an investigation**

In various parts of her motion, Stanley also claims she was "denied an investigation into her complaints of misconduct and the toxicity of her environment, while those of other races and genders were given investigations when complaining." ECF No. 22, PageID.418 (citing ECF No. 21-7, PageID.251-52, Stanley Dep. 88:19-24 and 90-93).[11] Specifically, she identifies as comparators the following individuals: Rhonda Sherman (white/female) and "Hogan" (Black/male). ECF No. 22, PageID.412-13. Defendant responds that Plaintiff failed to

[11] It is not clear when she alleges she requested an investigation into the "toxicity" of her work environment; little detail is offered on this underdeveloped claim.

carry her burden to show these are proper comparators. ECF No. 24, PageID.579.[12]

The Sixth Circuit "require[s] that the plaintiff demonstrate that he or she is similarly-situated to the non-protected employee in all relevant respects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998) (emphasis omitted); *Loggins v. Costco Wholesale Corp.*, No. 25-6071, 2026 LX 368158, at *13-14 (6th Cir. July 22, 2026) ("The plaintiff need not show that those actions violated the same company rule or policy, or introduce evidence showing that the comparator engaged in identical conduct. Instead, the plaintiff must merely show that the comparator engaged in conduct of comparable seriousness, and that the comparator is similar in all of the *relevant* aspects") (citations omitted, cleaned up). Plaintiff, however, makes very little effort to demonstrate how these individuals are similarly situated to herself in all relevant respects. The sole mention of these individuals in her response brief is their names, their sex, and their race. She

[12] Specifically: "Plaintiff was not similarly situated to her comparables in all respects. Those individuals were charged with narcotics cases and sustained charges. She was never charged with misconduct. The other comparables' complaints occurred outside of the statutory time restraints." ECF No. 24, PageID.579.

suggests these individuals also filed requests for investigation into misconduct or possibly some form of hostile work environment, but unlike her, they "received an investigation." ECF No. 22, PageID.413. But no other information about these alleged investigation requests is offered – not when they were requested, what the subject of their complaints were, nor any evidence on the subject. Plaintiff's citation to her deposition at page 88, lines 19-24, does not clarify matters. *See* ECF No. 22, PageID.413. Those lines have nothing to do with Sherman or Hogan. ECF No. 21-7, PageID.251. Admittedly, Plaintiff's deposition appears to reference these individuals at times. But it is not the court's job to piece together a plaintiff's case for them or try to divine the relevance of testimony Plaintiff did not cite; it was Plaintiff's responsibility to direct the court to the relevant particular parts of the record, and to explain the meaning of that testimony within their legal argument. *See Magnum Towing & Recovery v. City of Toledo*, 287 F. App'x 442, 449 (6th Cir. 2008) ("It is not the district court's . . . duty to search through the record to develop a party's claims; the litigant must direct the court to evidence in support of its arguments before the court."). The court finds that Plaintiff failed to establish that these

individuals are similarly situated to her in all relevant respects. Summary judgment will therefore be granted as to this claim.

**vii. Constructive discharge**

Lastly, Stanley alleges that she was constructively discharged on the basis of her race or sex. ECF No. 22, PageID.403. An employee may establish an adverse employment action by demonstrating that she was constructively discharged. *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014) (citing *Kocsis v. Multi-Care Mgmt. Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)). "A constructive discharge occurs when the employer, rather than acting directly, 'deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.'" *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir. 1987) (quoting *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325-26 (2d Cir. 1983) (further quoting citations omitted)). To demonstrate a constructive discharge, Plaintiff must adduce evidence to show that 1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person, and 2) the employer did so with the intention of forcing the employee to quit. *Saroli v. Automation and Modular Components, Inc.*, 405 F.3d 446 (6th Cir.

2005); *Laster*, 746 F.3d at 727-28. Whether a reasonable person would have felt compelled to resign depends on the facts of each case, but courts consider the following factors relevant: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *Id.* (quoting *Logan v. Denny's*, 259 F.3d 558, 569 (6th Cir. 2001)) (further quoting citations omitted). In the end, though, the complained-of behavior must have been "undertaken with the specific intention of forcing Plaintiff to quit." *Laster*, 746 F.3d at 728. To start, even assuming that Stanley has adduced enough evidence to show that her working conditions were so intolerable that any reasonable person would have felt compelled to resign, *see Logan*, 259 F.3d at 567, Plaintiff has not shown that there is any evidence that these actions were taken with the specific intention of forcing Plaintiff's resignation. *See* ECF No. 22, PageID.416 (Plaintiff's

argument). That alone ends the issue, and Defendant is entitled to summary judgment on any constructive discharge claim.

However, Plaintiff has also failed to show "intolerable" working conditions. Plaintiff argues that the "treatment of Plaintiff escalated to the point that she was forced to retire." ECF No. 22, PageID.409. And for that proposition she cites her deposition, ECF No. 21-7, PageID.244 (Stanley Dep. 63:1-3). But those three lines address only Plaintiff's argument that she was never provided with the disposition of the appeal hearing held in 2022 as to her 2014/2015 performance ratings. ECF No. 21-7, PageID.244. That lack of final notice of an appeal of two performance ratings is insufficient, as a matter of law, to show that the treatment was so intolerable that she was forced to retire.

In a footnote, Plaintiff cites additional evidence from a few different parts of the record. She cites her retirement notice, her CRIO email, and her "discrimination email." ECF No. 22, PageID.416 n.2. Her retirement notice largely catalogues her complaints from 2004 to 2023. The "CRIO email" and "discrimination email" were the emails she sent in September 2021. Finally, Plaintiff alleges that from June of 2023 until September of 2023, she took FMLA leave because of severe

work-related stress at her doctor's recommendation. ECF No. 21-7, PageID.247. The court takes these in order.

Plaintiff cited in her resignation letter a series of workplace complaints spanning nearly two decades, as early as 2004. Her continuing to work for many years after these complaints is itself evidence that the working conditions arising from these acts were not "intolerable." *See Smith v. Mich. Bell Tel. Co.*, No. 25-1946, 2026 LX 282724, at *5 (6th Cir. June 4, 2026) ("Smith failed to show [intolerable] conditions, perhaps most aptly highlighted by the fact that she continued to work for Michigan Bell for two years *after* the claimed 'intolerable' workplace.") (citing *Brelsford v. U.S. Foodservice Inc.*, No. 06-13628, 2007 WL 2902873, at *4 (E.D. Mich. Oct. 2, 2007) ("[Plaintiff] continued to work for another two months, which is inconsistent with intolerable working conditions."); *Mills v. Mason Consol. of Sch. Dist.*, No. 07-cv-14648, 2008 WL 4457808, at *9 (E.D. Mich. Sep. 30, 2008) ("Plaintiff continued in her position nearly two months beyond [a meeting] despite her allegation of 'intolerable' working conditions . . . .")). The most recent of these events appears to be her transfer to the "midnights" shift in 2021 – however, not only did she not resign until

2023, but shift work at a time that other employees presumably also are assigned to work, even if unpleasant or inconvenient, is not "intolerable" as a matter of law. *See Smith v. Henderson*, 376 F.3d 529, 534 (6th Cir. 2004) (citing cases that hold that "[d]issatisfaction with a work assignment is, as a matter of law, normally not so intolerable as to be a basis for constructive discharge[,] and "[d]issatisfaction with work assignments, . . . or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign."). As for her emails sent in September 2021, her working for almost two years after those emails is again evidence they did not complain of "intolerable" work conditions. Finally, even crediting that Plaintiff took FMLA leave due to work stress immediately before her retirement, and this suggests she was subjectively experiencing severe stress from her work environment, the problem remains that there are no facts prior to taking that leave that rise to the legal level of intolerability, and the leave itself cannot constitute intolerable work conditions.

And again, none of Plaintiff's arguments speak at all to the specific intent necessary to show constructive discharge, and so fails to show how she could meet that prong before a jury. As a result,

Plaintiff's resignation cannot, as a matter of law, constitute a constructive discharge, and Defendant is entitled to summary judgment on her claims related to that issue.

**B. Counts 5 and 6: Retaliation**

Title VII also prohibits an employer from retaliating against an employee who has opposed a discriminatory "unlawful employment practice." 42 U.S.C. § 2000e-3(a); *see also* Mich. Comp. Laws § 37.2701. Plaintiff relies on circumstantial evidence to establish her retaliation claims, so those claims likewise follow the *McDonnell Douglas* framework. *See Moore v. Coca-Cola Bottling Co. Consol.*, 113 F.4th 608, 627 (6th Cir. 2024). To establish a prima facie case of retaliation, Stanley must show that: (1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to the City; (3) the City thereafter took materially adverse employment action against Stanley;[13] and (4) there was a causal connection between the protected

[13] "The Supreme Court has read Title VII's anti-retaliation provision to require a 'materially adverse' action for reasons peculiar to the retaliation context. The Court in *Muldrow* found those reasons lacking in the discrimination context, and so declined to adopt the 'materially adverse' standard there. But the Court did not displace that standard for retaliation claims." *Patterson v. Kent State Univ.*, 155 F.4th 635, 647 (6th Cir. 2025) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-70 (2006); *Muldrow*, 601 U.S. at 357-58).

activity and the adverse employment action. *Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 571 (6th Cir. 2021). Retaliation claims under Title VII and the ELCRA are reviewed under the same standard. *See Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012).

Plaintiff only alleges that two adverse employment actions occurred in retaliation for her protected activity: (1) her allegedly constructive discharge, and (2) her transfer to an unwanted role. *See* ECF No. 22, PageID.423. As explained above, however, she cannot meet the threshold for constructive discharge as a matter of law, so Stanley's claim is limited solely to the latter claim.[14]

On the merits of the claim, even granting that her transfer to the nights shift from the day shift could suffice to show a materially adverse employment action, Plaintiff cannot prove that she (1) engaged in protected activity that (2) relevant decisionmakers knew about at the time of the adverse action or (3) was causally connected to the transfer.

[14] Again, the involuntary transfer claim appears to be untimely under Title VII because her transfer occurred in August 2021, and her EEOC charge was not filed until December 2023. But Defendant did not raise this issue, so the court does not rely on this ground.

As Defendant points out, one of the primary bases of Plaintiff's theory is that she filed two grievances in May and August of 2021. Unfortunately for Plaintiff, neither constitutes protected activity.

The May grievance is straightforward. The May grievance involved Plaintiff not being paid for six hours of overtime. Defendant correctly argues that this grievance does not mention a complaint of race or sex discrimination; it involves a labor dispute and so does not fall within the meaning of Title VII. ECF No. 21, PageID.142. In response, Plaintiff largely ignores Defendant's argument as to the May grievance, so forfeits a response to the argument that the May grievance does not suffice to show protected activity under Title VII. *See* ECF No. 22, PageID.422; *Alexander v. Carter*, 733 F. App'x 256, 261 (6th Cir. 2018) ("When a plaintiff fails to address a claim in response to a motion for summary judgment, the claim is deemed waived.") (internal marks and quoting citation omitted, cleaned up).

The August 2021 grievance, which involved Plaintiff being denied an appeal hearing for her 2014 and 2015 performance ratings, is more difficult and warrants more attention. To be sure, Plaintiff similarly did not address the August 2021 Grievance in her argument that she

engaged in protected activity, and that perhaps ought to have forfeited this point as well. *See* ECF No. 22, PageID.422. Elsewhere in her brief, however, she argued that the August 2021 Grievance "included a litany of allegations involving discriminatory treatment[.]" ECF No. 22, PageID.412. So the court addresses her claim that the August Grievance was sufficient to both a) constitute protected activity and b) show that Defendant knew that she was complaining of conduct she believed was unlawful.

For the proposition that her grievance contained a "litany" of discriminatory allegations her employer knew about, Stanley cites only to Patillo's deposition, which says nothing about the content of the grievance. ECF No. 22, PageID.412 (citing ECF No. 21-5, PageID.204 (Patillo Dep. 14:8-10)). The grievance itself also does not clearly present a race or sex discrimination complaint. *See* ECF No. 22-3, PageID.451-53. To the extent it can be read to include such claims, Plaintiff did not clearly identify those portions of the record in her briefings. She instead often cited to "Exhibit B" generally, which is an 80-page exhibit. ECF No. 22, PageID.423. Such citations fail to carry her burden under Rule 56, which requires citation to "particular parts of materials in the

record," but does not allow a party to gesture at a voluminous exhibit with multiple parts and ask the court to go searching for alleged material support therein. *See Knight Cap. Partners Corp. v. Henkel AG & Co., KGaA*, 930 F.3d 775, 780 n.1 (6th Cir. 2019) ("Judges are not like pigs, hunting for truffles that might be buried in the record.") (quoting citation omitted).

Still, at oral argument the court asked Plaintiff to identify with specificity those parts of the record she referred to when she again brought up this claim. In an email responding to the court's inquiry from the hearing, Plaintiff's counsel stated:

> In Exhibit B to Plaintiff's Memorandum in Opposition to the Motion for Summary Judgment, the Grievance presented to HR, ECF 22-3, the following page IDs contain Plaintiff's complaints of disparate treatment between herself and male Lieutenants/retaliation with regards to her service rating: PageID 462 (the last 2 paragraphs), PageID 463-464 (the bottom of page 463, carrying over onto 464), PageID 465 (the paragraph titled "Patience"), PageID 466 (the paragraph titled "Good Judgment"), PageID 469 (in the second to last paragraph) and PageID 470 (the title of Attachment 10).

The court has reviewed each of these citations, but this additional information fails to carry her burden to show that her 2021 Grievance

constituted protected activity. *See Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 451 (6th Cir. 2020); *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 647 (6th Cir. 2015). First, each and every one of these supplemental citations are not truly to her Grievance from 2021 – she is instead offering citations to the appeal she submitted in 2015, which she attached *as an exhibit* to her 2021 Grievance. *See* ECF No. 22-3, PageID.451 (2021 grievance); *id.* at PageID.461 (2015 appeal). The 2021 Grievance is a three-page document with 77 pages of attachments. This difference matters for purposes of determining whether her 2021 grievance was itself protected activity. To home in on why that is the case, simply assume that her citations in fact point to charges of discrimination from her appeal request in 2015.[15] This only

[15] This is a big assumption. Most of the citations she provides in her email point to allegations that are far too conclusory, vague, or simply scattered throughout a lengthy complaint to show that she "overtly" took a stand against discrimination. *See Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 288 (6th Cir. 2012). At best, several of these cited pages include brief phrases that say Stanley was "retaliated against" (ECF No. 22-3, PageID.462), that she navigated a "hostile work environment" (*Id.* at PageID.465), or allege "unequal treatment" and "hostile working conditions" (*Id.* at PageID.466, 470), but they do so without meaningful development and otherwise do not mention discriminatory activity. Stanley does, to be fair, point to two specific citations that directly reference alleged sex-based discrimination. *See* ECF No. 22-3, PageID.463-64 (complaining about her ratings "compared to the male lieutenants"); *id.* at PageID.469 ("despite . . . being treated vastly different than the male lieutenants . . ."). The problem, however, is that even accepting that these latter two brief statements constitute direct accusations of differential treatment based on sex, they are not overtly or directly presented in the

shows that her underlying appeal (from 2015) in part claimed that the ratings she received were discriminatory. Her grievance complaint in 2021, however, was not an appeal of the ratings themselves – it was a grievance regarding the alleged *administrative refusal to grant a hearing* to Stanley under the CBA. ECF No. 22-3, PageID.451 ("submit[ting that] Command Staff assigned to Human Resources (HR) and/or the Sixth Precinct violated Article 46 . . . of the current [CBA] between the City of Detroit and [DPLSA] . . . by refusing to convene a Performance Evaluation Appeal Board despite my timely Appeal of Ratings received for the Periods Ending October 2014, and April 2015."). It is that second and distinct issue (the failure to convene an appeal hearing under the CBA and DPD policies) that Stanley now claims is unlawful and discriminatory (on the basis that Lt. Zberkot quickly received a hearing, but Stanley did not), but no allegation appears in her 2021 Grievance that comes close to alleging unlawful discrimination in the failure to grant a hearing. Although she does not explain it, her theory seems to be that by attaching her old complaint

2021 Grievance, and do not challenge the lack of an appeals process as discriminatory. ECF No. 22-3, PageID.451-53.

from 2015 (challenging the substantive ratings) to her new complaint (challenging a lack of due process), she rendered her administrative due process complaint a charge of sex discrimination. This is too attenuated a chain of inference, and the Sixth Circuit has held that merely referencing "discrimination" does not transform a workplace complaint into a substantive charge of discrimination. *Cf. Khalaf v. Ford Motor Co.*, 973 F.3d 469, 490 (6th Cir. 2020) ("Although the plaintiff had mentioned 'sexual harassment' in his letter, which could be indicative of his taking a stand against such, we dismissed his complaint because the letter was not actually 'asserting discrimination,' but rather was intended primarily to . . . 'contest[] the correctness of a decision made by his employer. . . .'") (quoting *Willoughby v. Allstate Insurance Co.*, 104 F. App'x 528, 530-31 (6th Cir. 2004)). The thrust and purpose of the 2021 complaint was to assert Stanley's right to a hearing and to challenge the correctness of the failure to provide a hearing, not challenge any allegedly discriminatory aspect of the ratings themselves. Stanley does not mention Zberkot – or any other alleged race discrimination comparator – in her grievance. Not until a September 2021 email to the Department did Stanley bring up that Zberkot's treatment in receiving

an appeal hearing independently represented racial discrimination. *See* ECF No. 22-8, PageID.569. "The governing principle" from the caselaw "is not that magic words must be intoned but that the language used be enough, in a specific factual context, to convey the accusation and its basis." *Crawford v. Chipotle Mexican Grill, Inc.*, 773 F. App'x 822, 829 (6th Cir. 2019). For a plaintiff to demonstrate a qualifying "protected activity," she must show that he took an "overt stand against suspected illegal discriminatory action." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 288 (6th Cir. 2012) (citations omitted). It is simply not clear from the face of her 2021 grievance that she intended to allege that the failure to provide an appeal hearing was itself unlawful discrimination, so she cannot show that her employer understood this to be a complaint regarding unlawful discrimination rather than, as she herself phrased it, a violation of the CBA and the DPD Manual. *See* ECF No. 22-3, PageID.451. The distinction between challenging the alleged failure to grant a hearing as discrimination and challenging the ratings themselves as discriminatory means that her 2021 Grievance was not protected activity within the meaning of Title VII.

With her May and August 2021 grievances unavailing, Stanley turns to two other instances of alleged protected activity: She says she "also asserted retaliation based on her complaints of discrimination and retaliation on September 3, 2021" and "complained about discrimination to CRIO." ECF No. 22, PageID.422 (citing Defendant's Motion Exhibit 6, ECF No. 21-7, Stanley Dep. 57:1-25, 58:23-59:15; Plaintiff's Exhibit F, Discrimination Complaint Email; Plaintiff's Exhibit G, CRIO Email). Plaintiff's Exhibit F, however, which she also references in the cited portion of her deposition, was sent on September 3, 2021, *after* Stanley was transferred to the nights shift in August 2021. ECF No. 22-7, PageID.566. The same goes for Exhibit G, which was sent on September 9, 2021. ECF No. 22-8, PageID.568. Even accepting that those emails can constitute protected activity and that the Department knew about them, they could not have been a cause of her transfer because those communications were sent after the transfer had already occurred. ECF No. 22, PageID.409 (Plaintiff was transferred August 23, 2021).

Because Plaintiff's claim of constructive discharge lacks evidence of specific intent and of intolerable conditions, because her May and

August 2021 grievances were not protected activity, and because Plaintiff lacks any plausible connective tissue between her September emails and her transfer, Plaintiff cannot succeed on her retaliation claims as a matter of law, and Defendant is entitled to summary judgment on Counts 5 and 6.

### C. Count 7: *Monell* Liability

In her final count, Stanley brought a claim under 42 U.S.C. § 1983 for "Equal Protection" violations. However, the only Defendant in this case is the City of Detroit, a municipality. Even assuming that Stanley suffered any racial discrimination, municipalities are generally not liable for one-off instances of constitutional violations by their agents. Instead, they are only liable for an unconstitutional policy, practice, or custom. *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014); *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). The Sixth Circuit has instructed that, to satisfy the requirements of *Monell*, a plaintiff "must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993) (internal citations and quotations omitted). Defendant argues that

Plaintiff has failed to identify any constitutional violation that was caused due to any City policy or custom.

Plaintiff argues in response that this argument is "skeletal at best." But Plaintiff's own argument in response, in full, is the following:

> The Complaint alleges illegal discrimination. This is a constitutional violation. Furthermore, she explained that there is a custom, i.e. a widespread pattern and practice, of discrimination in the City of Detroit Police Department with regards to investigating discrimination claims, ECF No. 21, Defendant's Motion Exhibit 1, Plaintiff's Complaint, PageID.168. The Complaint also references that this discrimination issue has been ongoing since at least 2016, wherein the CORE report was issued reflecting a growing issue of systemic discrimination within the DPD. ECF No. 21, Defendant's Motion Exhibit 1, Plaintiff's Complaint PageID.153.

ECF No. 22, PageID.426 (citation form modified).

The only citations in Plaintiff's argument are to ECF No. 21-2 (Exhibit 1 to Defendant's motion), which is just Plaintiff's Complaint. But Plaintiff's complaint is not verified, so is not evidence at summary judgment. *See* ECF No. 1, PageID.21; *see King v. Harwood*, 852 F.3d 568, 578 (6th Cir. 2017) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999) ("the nonmoving party may not rest upon the mere

allegations or denials of his pleading," but satisfies her burden if she produces a "verified complaint or additional affidavit") (citation omitted, cleaned up). The court does not find Defendant's argument to be skeletal; it properly identified a serious deficiency in Plaintiff's presentation. In response, Plaintiff cited to no "particular parts of materials in the record" to carry her burden to show that there is a material dispute of fact on this claim. Fed. R. Civ. P. 56(c)(1)(A).[16] Summary judgment will therefore be granted as to Count 7.

## V. CONCLUSION

To summarize: the court grants the motion for summary judgment as to Counts 1-4 on the claims of denial of overtime, requiring additional documentation in a grievance regarding overtime, being denied an "investigation into misconduct," and on the claim of constructive discharge. Counts 1-4 survive as to being denied an appeal

[16] Attached to Plaintiff's Complaint is her EEOC charge of discrimination which, unlike the Complaint itself, was submitted under penalty of perjury and may properly count as evidence in this posture. ECF No. 21-2, PageID.170-71; *see* Fed. R. Civ. P. 56(c)(4) (declarations admissible at summary judgment). However, no part of that charge references or alleges an unconstitutional custom, policy, or practice of the City (at best, it alleges that the City *refused* to follow its generally nondiscriminatory policies as to Stanley in a retaliatory manner). *See* ECF No. 21-2, PageID.170; *see also* ECF No. 22, PageID.416 n.2 ("DPD repeatedly violat[ed] its own policies").

hearing regarding the 2014-2015 service ratings, not being issued service ratings, and Stanley's involuntary transfer to the 2nd Precinct. Defendant is granted judgment in full on Counts 5-7 for retaliation and *Monell* liability.

Defendant's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART** in accordance with the above. This is not a final order and does not close the case. Further dispositive motions, if any, are due within 21 days, and the ordinary briefing deadlines will follow. Otherwise, a phase two scheduling order will issue for motions in limine and preparation for trial.

**SO ORDERED**.

Date: August 13, 2026

s/F. Kay Behm
F. Kay Behm
United States District Judge